59 P.3d 803

**FACILITEC, INC., Plaintiff–Appellee,**

**v.**

**J. Elliot HIBBS, in his capacity as Director of the Department of Administration for the State of Arizona, Defendant–Appellant.**

**No. 1 CA–CV 01–0139.**

Court of Appeals of Arizona,
Division 1, Department T.

Nov. 5, 2002.

As Corrected Nov. 29, 2002.

Review Granted April 22, 2003.

Janet Napolitano, Attorney General by Charles A. Grube, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellant.

Fennemore Craig by Timothy Berg and Keith Hendricks and Jennifer Prendiville, Phoenix, Attorneys for Plaintiff–Appellee.

**OPINION**

NOYES, Judge.

¶ 1 The question is whether the Director of the Arizona Department of Administration ("ADOA") can delegate to his Deputy Director matters involving the exercise of judgment and discretion. Concluding that the answer is "Yes," we reverse and remand with directions to grant partial summary judgment to ADOA. Our appellate jurisdiction is pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (1994).

**I.**

¶ 2 The case arises from an ADOA Request for Proposal that solicited bids on a contract to provide office furniture to the State. ADOA awarded the contract to a bidder other than Appellee Facilitec, Inc., who then filed a protest, demanding that the contract be rescinded and that a new one be awarded to Facilitec. The State Procurement Officer denied the protest. Facilitec then appealed to the ADOA Director, who delegated the matter to the ADOA Deputy Director.

¶ 3 The ADOA Deputy Director issued a Preliminary Decision and Order and referred the matter to the Arizona Office of Administrative Hearings for a hearing on certain identified issues. After the hearing, the Administrative Law Judge ("ALJ") entered a recommended decision and order that was in some respects favorable to Facilitec. Although the ALJ did not recommend that the original contract be rescinded, he did recommend that Facilitec be awarded an additional, non-exclusive contract to provide office furniture to the State. On review, however, the Deputy Director rejected that part of the ALJ's recommendation and issued an agency decision that denied Facilitec's protest.

¶ 4 Facilitec then filed a complaint in Superior Court, arguing (for the first time) that the Deputy Director lacked authority to review the ALJ's recommendation. Facilitec

further argued that, because A.R.S. § 41–1092.08(B) (Supp.2001) provides that "the head of the agency" may review the ALJ's recommendation, and because the head of ADOA did not conduct this review, the ALJ's recommendation is the ADOA final decision inasmuch as § 41–1092.08(D) provides, "if the head of the agency ... does not accept, reject or modify the administrative law judge's decision within thirty days ... the office shall certify the administrative law judge's decision as the final administrative decision."

¶ 5 The trial court, the Honorable Susan R. Bolton, granted partial summary judgment to Facilitec, in a minute entry that stated, in part, as follows:

The Department argues that the power of the Director to authorize the Deputy Director to make final administrative decisions under the administrative appeals procedure of A.R.S. Section 41–1092.08 is derived from A.R.S. Section 38–462 which provides: "unless otherwise provided, each deputy or county officer possesses the powers and may perform the duties prescribed by law for the office of the principal." Plaintiff Facilitec argues that this statute cannot be validly interpreted to impliedly grant to the Deputy Director the judicial function of the Director. This Court agrees.

A.R.S. Section 41–702(A) provides that the Director shall appoint a deputy director who "shall assist the director in administering the department." This language is a grant of administrative functions only.

In order for the Director to have the power to delegate legislative or judicial functions the legislature must expressly grant the power. Powers involving judgment and discretion, which have been vested by statute may not be delegated unless such delegation has been expressly authorized by the legislature. *Godbey v. Roosevelt School District No. 66 of Maricopa County,* 131 Ariz. 13, 638 P.2d 235 (App.1981) [1]. Nothing in the record before the Court shows that the legislature has expressly granted the Director the authority to delegate his authority to make final

administrative decisions under the administrative appeals procedure. The general language of Title 38 cannot be found to be a legislative authorization for the delegation of this quasi-judicial responsibility.

In footnote 1, the trial court stated:

The Court, in *Godbey v. Roosevelt School District,* 131 Ariz. 13, 19, 638 P.2d 235, 241 (App.1981), stated:

" '[T]he general rule is that a municipal corporation, or a quasi-municipal corporation such as the District, may delegate to subordinate officers and boards powers and functions which are ministerial or administrative in nature, where there is a fixed and certain standard or rule which leaves little or nothing to the judgment or discretion of the subordinate. However, legislative or judicial powers, involving judgment and discretion on the part of the municipal body, which have been vested by statute in a municipal corporation may not be delegated unless such has been expressly authorized by the legislature.' [citation omitted]" (Emphasis in original)

## II.

¶ 6 The grant of partial summary judgment to Facilitec was based on interpretation of Arizona statutes. Statutory interpretation is an issue of law, which we review *de novo. Lewis v. Ariz. Dep't of Econ. Sec.,* 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996). Our primary goal when interpreting statutes is to derive the intent of the legislature. *Id.* A statute is interpreted according to the ordinary meaning of its language, unless such a reading would lead to an absurd result. *Dunn v. Indus. Comm'n,* 177 Ariz. 190, 194, 866 P.2d 858, 862 (1994). If the ordinary meaning leads to an absurd result, we employ other interpretive tools such as the policy, purpose, history, or context of the statute to give effect to the legislature's intent. *State v. Williams,* 175 Ariz. 98, 102, 854 P.2d 131, 135 (1993).

## III.

¶ 7 The legislature created the ADOA by enacting A.R.S. §§ 41–701 to –806 (1999 & Supp.2001). Section 41–701(C) provides

that the Director is to be appointed by the Governor, with the advice and consent of the Senate. Section 41–702(A) provides that the Director may appoint a Deputy Director, with the approval of the Governor, and it further provides, "The deputy director serves at the pleasure of the director and shall assist the director in administering the department by performing the duties and responsibilities that the director prescribes."

¶ 8 The trial court held that the phrase "shall assist the director in administering the department" meant that § 41–702(A) was a "grant of administrative functions only." Because the trial court also equated "administrative" with "ministerial," its ruling effectively amended § 41–702(A) by adding to it the following language of limitation: "except that the Deputy Director can only perform ministerial tasks."

¶ 9 We conclude that, especially when used in reference to the Arizona Department of Administration, the plain meaning of "administering" does not reasonably suggest the "ministerial" limitation argued by Facilitec and found by the trial court. *See Parada v. Parada,* 196 Ariz. 428, 431, ¶ 14, 999 P.2d 184, 187 (2000) (using dictionary to supply the plain meaning of a statutory term); *State v. Proctor,* 196 Ariz. 557, 562 n. 4, 2 P.3d 647, 652 n. 4 (App.1998). "Administer" is defined in Webster's New World Dictionary 18 (2d College ed.1984) as "to manage or direct," and it is defined in Black's Law Dictionary 44 (6th ed.1990) as "to manage or conduct [citation omitted]; to discharge the duties of an office; to take charge of business; . . . ." We conclude that the legislative use of the word "administering" in § 41–702(A) was intended to include decision-making responsibilities; it was not intended to be limited to only ministerial acts.

¶ 10 We also note that A.R.S. § 38–462 (2001) provides, "unless otherwise provided, each deputy of a state or county officer possesses the powers and may perform the duties prescribed by law for the office of the principal." As relevant here, the "unless otherwise provided" limitation is found in § 41–702(A), which limits the Deputy Director to "performing the duties and responsibilities that the director prescribes."

¶ 11 Where the trial court got off track, we believe, was in following the oversimplified "general rule" stated at footnote 1 of its minute entry. *See supra* ¶ 5. The trial court quoted this "general rule" from *Godbey,* which quoted it from *Big Sandy School District No. 100–J v. Carroll,* 164 Colo. 173, 433 P.2d 325, 328 (1967), *overruled on other grounds, Normandy Estates Metropolitan Recreation District v. Normandy Estates, Ltd.,* 191 Colo. 292, 553 P.2d 386, 389 (1976).

¶ 12 The *Big Sandy* general rule equates "administrative" with "ministerial," and it equates "legislative or judicial" with "judgment and discretion." In reality, of course, many administrative acts require the exercise of judgment and discretion. Thus, the *Big Sandy* general rule is too simplistic to be of much assistance in deciding cases such as the present one. More importantly, the *Big Sandy* general rule is inconsistent with § 38–462, which grants to the Deputy Director the same powers and duties as have been granted to the Director, and with § 41–702(A), which provides that the Deputy Director shall perform *the* duties and responsibilities that the Director prescribes.

¶ 13 The dissent asserts that the Director lacks statutory authority to delegate quasi-judicial functions to the Deputy. The dissent relies on *Cactus Wren Partners v. Arizona Department of Building & Fire Safety,* 177 Ariz. 559, 869 P.2d 1212 (App. 1993). That case, however, does not speak to the issue before us; that case is a separation-of-powers case that articulates a test for determining whether "a legislative scheme which confers upon an administrative agency adjudicative powers unconstitutionally infringes upon those of the judiciary." *Id.* at 562, 869 P.2d at 1215. The present case is not about separation of powers; it is about statutory interpretation. As previously stated, we conclude that the language of § 41–702(A), when interpreted according to its ordinary and apparently intended meaning, authorized the Director to delegate to the Deputy the decision-making duty in question.

## IV.

¶ 14 We conclude that the Deputy Director decided Facilitec's procurement protest pur-

suant to a proper grant of authority from both the Arizona Legislature and the ADOA Director. The trial court's grant of partial summary judgment to Facilitec is therefore reversed, and the matter is remanded with directions to grant partial summary judgment to ADOA.

CONCURRING: PHILIP HALL, Presiding Judge.

GARBARINO, Judge, dissenting.

¶ 15 The majority concludes that the ADOA Director can delegate "matters involving the exercise of judgment and discretion" to the Deputy Director, and reverses the trial court's grant of partial summary judgment in Facilitec's favor. Although I agree with the majority that the Director can delegate *administrative* matters to the Deputy Director, the Director lacks statutory authority to delegate quasi-judicial functions to the Deputy Director. I would, therefore, affirm.

¶ 16 A judicial function is more than a function that "requires discretion, deliberation, thought, and judgment." *Alabam's Freight Co. v. Hunt,* 29 Ariz. 419, 426, 242 P. 658, 660 (1926). When the function involves adjudicating a dispute between parties, ascertaining facts, and applying the law, the function is a judicial function. *J.W. Hancock Enters., Inc. v. Ariz. State Registrar of Contractors,* 142 Ariz. 400, 406, 690 P.2d 119, 125 (App.1984); *see Cactus Wren Partners,* 177 Ariz. at 563, 869 P.2d at 1216.

¶ 17 The decision to accept, reject, or modify the decree of the ALJ is a *quasi-judicial* determination. The Director makes the final decision based on the facts and evidence as presented by adverse parties. The Director's decision is, clearly, an adjudication of a dispute among parties, as distinguished from a managerial or enforcement function.

¶ 18 An officer of an administrative agency can perform quasi-judicial functions, but the authority to do so must be expressly granted by the legislature and must be incidental to the agency's primary purpose. *Cactus Wren Partners,* 177 Ariz. at 562, 869 P.2d at 1215. While I agree that the *Big Sandy* rule as stated in *Godbey* may be too simplistic, the rule still holds true: quasi-judicial functions

can only be delegated when explicitly permitted by statute. *See Cactus Wren Partners,* 177 Ariz. at 562–63, 869 P.2d at 1215–16. Adjudication of a dispute between two parties is a quasi-judicial function and does not fall within the scope of administrative or managerial duties of the ADOA Deputy Director.

¶ 19 Because adjudicating procurement disputes is a quasi-judicial function involving the resolution of a dispute between adverse parties, the authority to make the decision can only be granted by the legislature and must be express in nature. The legislature has expressly granted that authority *to the ADOA Director,* to the exclusion of the Deputy Director. The legislature limited the duties of the ADOA Deputy Director to the "administrative" duties of the agency. The trial court correctly ruled that the Deputy Director lacks the authority to make the final administrative decision in a procurement protest and that the Director cannot delegate this quasi-judicial function to the Deputy Director. I would affirm the trial court's grant of partial summary judgment.